# EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| MIDDLESEX, SS | SUPERIOR COURT DEPT.<br>C.A. NO. |
| TIMOTHY T. GILLIGAN,<br>    Plaintiff<br><br>V.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC.<br>a.k.a. TWIN CITY FIRE INSURANCE COMPANY, THE<br>HARTFORD INSURANCE GROUP and THE HARTFORD,<br>    Defendant | COMPLAINT |

### COUNT I – APPOINTMENT OF ARBITRATOR
### PURSUANT TO GENERAL LAWS CHAPTER 251 SECTION 4

1. The plaintiff, Timothy T. Gilligan, was at all times material to this action a resident of 23 Rosewood Avenue, Billerica, Middlesex County, Massachusetts.

2. The defendant, The Hartford Financial Services Group, Inc., also known as Twin City Fire Insurance Company, The Hartford Insurance Group, and The Hartford, is a corporation engaged in business in the Commonwealth of Massachusetts with a principal place of business at 690 Asylum Road, Hartford, Connecticut.

3. On or about March 30, 2018, the plaintiff was operating a motor vehicle with due care on the Everett Turnpike in Merrimack, New Hampshire.

4. At said time and place, the Tortfeasor, Kelli L. Lucier, drove her motor vehicle negligently so closely behind the plaintiff's motor vehicle without allowing adequate time to slow down so as to crash into the rear of the plaintiff's motor vehicle at approximately 60 mph.

5. The Tortfeasor did not keep her eyes on the road ahead of her at all times before the crash.

6. The Tortfeasor did not drive at a safe speed at all times before the crash.

1

7. The Tortfeasor did not keep her motor vehicle a safe distance from the plaintiff's motor vehicle at all times before the crash.

8. The Tortfeasor did not pay attention at all times before the crash.

9. The significant force of the crash-impact lifted the back of the plaintiff's motor vehicle off the pavement.

10. As a result of the crash, the plaintiff suffered harms and losses, including but not limited to neck and back strains, chronic axial neck pain, buttock pain, skin sensation disturbances, chronic thoracic spine pain, and right elbow cubital tunnel syndrome; was prevented from engaging in his usual and customary activities; was obliged to pay in excess of $21,000 in medical expenses; suffered an 8% whole person permanent impairment according to the AMA Guides to the Evaluation of Permanent Impairment, 6th Edition; suffer great pain of body and anguish of mind; was otherwise harmed; and his ability to enjoy life was and is impaired.

11. On July 22, 2020, the defendant issued a letter granting permission to the plaintiff to accept the Tortfeasor's $20,000 policy limits to settle his underlying negligence claim against the Tortfeasor.

12. At all times material herein, a standard Massachusetts automobile insurance policy (the "Policy") issued by the defendant covering the plaintiff was existing, valid and in force.

13. The underinsured motorist coverage limits of the policy are $1,000,000.00 per person per collision.

14. On December 4, 2020, the plaintiff presented a written claim for underinsured motorist benefits under the policy for injuries, harms and losses sustained as a result of the March 30, 2018 motor vehicle collision. A copy of that written claim letter is attached marked "A".

15. In the absence of an agreement on the value of the plaintiff's damages, harms and losses, the December 4, 2020 written claim demanded arbitration.

16. The plaintiff and the defendant have not agreed as to any damages that the plaintiff may have sustained as a result of the aforementioned motor vehicle collision.

17. The terms and conditions of the policy require that the amount of damages, harms and losses sustained by the plaintiff as a result of the March 30, 2018 motor vehicle collision be determined through arbitration where the parties have failed to agree.

WHEREFORE, the plaintiff requests that the Court appoint an arbitrator to hear and decide this matter pursuant to M.G.L. c. 251.

## COUNT II – 93A/176D VIOLATIONS

18. The plaintiff repeats the allegations contained in paragraphs 1 thought 16.

19. Plaintiff's December 4, 2020 written demand for arbitration included itemized crash-related medical records and bills totaling $21,468.00, and Dr. Bhat's October 20, 2020 narrative report causally relating plaintiff's symptoms and treatment to the March 30, 2018 crash, opining that plaintiff "may very well need additional treatment" and that plaintiff has an 8% permanent impairment as a result of the crash.

20. On January 4, 2021, plaintiff sent an email to the defendant asking it to: "Please let me know The Hartford's proposed arbitrators."

21. On January 5, 2021, the plaintiff made a third request for arbitration during a telephone conference with the defendant.

22. On January 20, 2021, the plaintiff left a voice mail message for the defendant which included a fourth request for arbitration.

23. During plaintiff's January 22 and 25, 2021 telephone conferences with the defendant, the plaintiff requested arbitration for the fifth and sixth time and asked for The Hartford's proposed arbitrators.

24. During plaintiff's February 8, 2021 telephone conference with the defendant, the defendant apologized for not following up on plaintiff's requests for arbitration and promised to do so.

25. During plaintiff's February 9, 2021 telephone conference with the defendant, the defendant told the plaintiff that someone from the defendant's litigation department would contact the plaintiff that day or the next regarding plaintiff's requests for arbitration.

26. As of February 23, 2021, the defendant had not responded to the plaintiff's six requests for arbitration.

27. On February 23, 2021, plaintiff forwarded a written demand to the defendant for relief pursuant to G.L. c. 93A and 176D. A true copy of the demand letter is attached marked "B".

28. Plaintiff's February 23, 2021 written 93A/176D demand asked the defendant to:

   a. "'provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law ... for a compromise settlement', as required by MGL c. 176D §3 (9) (n), including the sums allocated for partial disability, pain and suffering, past medical expenses, future medical expenses, permanent impairment, residual limitations, anxiety and emotional trauma,

   b. Respond to our request for arbitration, and

   c. effectuate a prompt, fair and equitable settlement in the sum of $130,000 for Mr. Gilligan's claim for which Kelli Lucier's liability is more than reasonably clear."

29. A copy of defendant's response dated March 12, 2021 is attached marked "C".

30. The defendant's March 12, 2021 response failed to:

4

    a. provide a reasonable explanation of the basis in relation to the facts (including the sums allocated for partial disability, pain and suffering, past medical expenses, future medical expenses, permanent impairment, residual limitations, anxiety and emotional trauma) or the applicable law for its $35,000 offer of settlement, and

    b. respond to plaintiff's seventh request for arbitration.

31. As a result of those failures, the plaintiff is forced to file this action to litigate his claims.

32. The defendant failed to acknowledge and act reasonably promptly upon plaintiff's communications with respect to his claim arising under the insurance policy in violation of G.L. c. 176D, §3.

33. The defendant failed to effectuate prompt, fair and equitable settlement of plaintiff's claim, in which liability is reasonably clear, in violation of G.L. c. 176D §3.

34. The plaintiff has satisfied all requirements of presentment of his claim under G.L. c. 93A and c. 176D.

35. The acts of defendant are unfair and deceptive acts in violation of G.L. c. 93A.

36. The acts of defendant are willful and knowing acts in violation of G.L. c. 93A.

37. The failure of defendant to make a reasonable offer of settlement is a willful and knowing violation of G.L. c. 93A and 176D.

38. The failure of defendant to respond to plaintiff's seven separate requests to arbitrate his claim is a willful and knowing violation of G.L. c. 93A and 176D.

    WHEREFORE, the plaintiff requests that the Court enter judgment against the defendant in the amount of his damages, together with multiple damages in accordance with G.L. c. 93A, §9, attorneys' fees, interest and costs as permitted by law.

Dated: March 19, 2021

                                       */s/ Kevin S. Sullivan*
Attorney Kevin S. Sullivan
BBO #547306
Law Offices of Kevin S. Sullivan, LLC
Fletcher Street Professional Center
9 Fletcher Street, Suite A
Chelmsford, MA 01824-2886
kevin@kevinsullivanlaw.com
978-250-2777

A TRUE COPY ATTEST
John J. O'Leary
CT State Marshal - Hartford County

6

# Exhibit A



**LAW OFFICES OF KEVIN S. SULLIVAN, LLC**
FLETCHER STREET PROFESSIONAL CENTER
9 FLETCHER STREET, SUITE A
CHELMSFORD, MA 01824-2886
TEL.: 978-250-2777
FAX: 978-600-2052
http://kevinsullivanlaw.com

Kevin S. Sullivan
kevin@kevinsullivanlaw.com

Diana C. Kent, Legal Assistant
diana@kevinsullivanlaw.com

December 4, 2020

Kristen Tillman, Sr. Claims Rep.
The Hartford Financial Services Group, Inc.
P.O. Box 14261
Lexington, KY 40512

Re:   Your insured:   Pipefitters Association Local Union
      Claimant:       Timothy Gilligan
      D.O.I.:         March 30, 2018
      Claim No.:      Y89 AC 22188

Dear Ms. Tillman:

As you know from our previous communications, I represent Timothy Gilligan with respect to the harms and losses he suffered in the above referenced two-vehicle motor vehicle crash. With your permission, we accepted the at fault driver's (tortfeasor's) $20,000.00 policy limits. We now assert this claim for the balance of Mr. Gilligan's harms and losses.

The crash took place on the Northbound side of the Everett Turnpike in Merrimack, New Hampshire, at about 4:54 p.m. on Friday, March 30, 2018. The tortfeasor, Kelli L. Lucier caused the crash. According to New Hampshire State Sargent Grealy, the tortfeasor was "AT FAULT FOR FOLLOWING TOO CLOSELY TO VEHICLE #2 (Timothy Gilligan's car) NOT ALLOWING ADEQUATE TIME TO SLOW DOWN."

A copy of Sargent Grealy's Uniform Police Traffic Crash Report is attached marked "A".

The force of the impact lifted the back of Mr. Gilligan's car off the pavement and caused these visible damages to Mr. Gilligan's car:



Simply put, the tortfeasor's negligence was the sole cause of the crash and of Mr. Gilligan's harms and losses.

**BACKGROUND**: At the time of the crash, Mr. Gilligan was 58-years old and enjoying good health. He worked full time, as the Business Agent for the Pipefitters Association Local Union 537 Boston and Vicinity.

A summary of some of the other elements of Mr. Gilligan's claim follows:

| | |
|---|---|
| D.O.B.: | October 29, 1959 |
| Gender: | Male |
| Height: | 5' 8" |
| Weight: | 168 lbs. |
| Date of First Treatment: | April 4, 2018 |
| Injuries: | Neck and back strains, Chronic axial neck pain, Buttock pain, Skin sensation disturbances, Chronic thoracic spine pain, Right elbow cubital tunnel syndrome |
| Procedures: | Cervical spine x-rays (4/4/18), Lumboscral spine x-rays (4/4/18), Thoracic spine x-rays (4/4/18), Chiropractic treatments (6), Cervical spine (3/6/19), Home exercise program, Gentle stretching, Heat and ice, Cervical MRI (3/14/19), Right cervical 7 transforaminal injection (3/26/19), EMG (8/26/20) |
| Prescriptions: | Ibuprofen, Diclofenac, Tizanidine, Zanaflex, Physical therapy (28 treatments), Home exercise program |
| Medical Specials: | $21,468.00 (to date) |
| Partial Disability: | Two and a half years and continuing |
| Property Damages: | $6,303.23 (see the attached damage appraisal marked "B") |
| Preexisting conditions: | Asymptomatic degenerative disc disease |
| Permanent Impairment: | 8% whole person according to the AMA Guides to the Evaluation of Permanent Impairment, 6th Edition (see Dr. Bhat's attached October 20, 2020 narrative report, marked "C") |

**LIABILITY**: In the moments before the crash, both vehicles were traveling at approximately 60 mph in the far-left lane. The tortfeasor's vehicle was in the flow of traffic directly behind Mr. Gilligan's car. According to Sargent Grealy's Crash Report:

AS TRAFFIC WAS SLOW IN FRONT OF THEM DUE TO NORMAL CONGESTION VEHICLE #2 (Mr. Gilligan's) STARTED TO SLOW DOWN. VEHICLE #1 (the tortfeasor) NOTICED TRAFFIC SLOWING AHEAD AND ATTEMPTED TO CHANGE LANES INTO THE MIDDLE LANE AND SLOW DOWN. IN THE PROCESS VEHICLE#1 STRUCK VEHICLE #2 ON THE BACK PASSENGERS'S SIDE BUMPER WITH ITS FRONT DRIVERS SIDE BUMPER.

**MEDICAL TREATMENT**: During the first two days after the crash, Mr. Gilligan felt increasing amounts of pain throughout his back and neck, suffered headaches, was lightheaded, experienced left arm numbness when he laid on his left side, and was not able to sleep well. An itemized list of the medical records together with copies of those records is attached marked "D". They summarize the physical injuries, pain, symptoms, anxiety, treatment, and 8% whole person (according to the AMA Guides to the Evaluation of Permanent Impairment, 6th Edition) caused by the crash.

**MEDICAL EXPENSES**: Attached marked "E" is an itemized list of the medical bills to date totaling $21,468.00, together with copies of those bills, that Mr. Gilligan incurred to treat the physical harms caused by your insured's negligence.

**RESIDUALS**: Mr. Gilligan is now subject to residual neck and back pain with tingling into the forearm and two small fingers on his left side. Dr. Bhat expects that flare ups of those symptoms will require further oral medications, additional physical therapy, and/or additional fluoroscopy-guided injections in the future.

**DEMAND**: This underinsured motorist claim has a value of between $500,000.00 and $750,000.00. For that reason, we demand $600,000.00 to settle this claim in exchange for a resolution within the next 21 days. In the alternative, we hereby demand arbitration.

If you have any questions, or if you anticipate any delay with evaluating and responding to this claim, please contact me.

Thank you in advance for your anticipated cooperation.

Very truly yours,

Kevin S. Sullivan

Enclosures
Dc: Timothy Gilligan

# Exhibit B



**LAW OFFICES OF KEVIN S. SULLIVAN, LLC**
FLETCHER STREET PROFESSIONAL CENTER
9 FLETCHER STREET, SUITE A
CHELMSFORD, MA 01824-2886
TEL.: 978-250-2777
FAX: 978-600-2052
http://kevinsullivanlaw.com

Kevin S. Sullivan
kevin@kevinsullivanlaw.com

Diana C. Kent, Legal Assistant
diana@kevinsullivanlaw.com

February 23, 2021

The Hartford Financial Services Group, Inc.
Attn.: Caroline Girard
P.O. Box 14268
8 Farm Springs Road
Lexington, KY 40512

Re:    Your insured:  Pipefitters Association Local Union
        Claimant:      Timothy Gilligan
        D.O.L.:        March 30, 2018
        Claim No.:     Y89 AU 22188

Dear Ms. Girard:

This is a demand for relief pursuant to the Massachusetts Consumer Protection Act, Massachusetts General Laws, Chapter 93A, Section 9. I represent Timothy Gilligan with respect to this claim. This letter is to advise you that the conduct of your claims department with respect to the handling of this claim constitutes unfair and deceptive claims practices prohibited by M.G.L. c. 176D and M.G.L. c. 93A.

I.    BACKGROUND

The documented background history of this claim is set out in:

A. Your Senior Claims Representative Kristen Tillman's July 22, 2020 letter granting permission to accept MAPFRE's $20,000 policy limits to settle the underlying claim.

B. Our December 4, 2020 demand for arbitration that we sent to Ms. Tillman, which also included $21,468.00 in itemized medical expenses and Dr. Bhat's October 20, 2020 narrative report causally relating Mr. Gilligan's symptoms and treatment to the March 30, 2018 crash, and opining that Mr. Gilligan "may very well need additional treatment" and that Mr. Gilligan has an 8% permanent impairment as a result of the crash.

C. My January 4, 2021 email to Ms. Tillman asking her to: "Please let me know The Hartford's proposed arbitrators."

D. My January 5, 2021 telephone conference with Ms. Tillman repeating our request for arbitration.

E. The voice mail message I left for Ms. Tillman on January 20, 2021 requesting arbitration.

F. My January 22 and 25, 2021 telephone conferences with Ms. Tillman repeating our requests for arbitration and for The Hartford's proposed arbitrators.

G. My February 8, 2021 telephone conference with Ms. Tillman during which she apologized for not following up on our requests for arbitration and promised to speak to her boss and get back to me.

H. My February 9, 2021 telephone conference with Ms. Tillman during which she told me that someone from the litigation department would contact me that day or the next regarding our requests for arbitration.

All of those documented records and communications are hereby incorporated by reference into this MGL c. 93A demand for relief.

II. <u>93A/176D VIOLATIONS</u>

The Hartford Financial Services Group, Inc. ("The Hartford") has a duty to make a prompt and fair settlement offer. *Hopkins v. Liberty Mut. Ins. Co.*, 434 Mass. 556 (2001). It also has a duty to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." MGL c. 176D §3 (9) (f). In addition, The Hartford has an obligation to "provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law ... for a compromise settlement." MGL c. 176D §3 (9) (n). Despite the more than reasonably clear liability and damages, The Hartford has failed to make a reasonable offer to settle Mr. Gilligan's claim, and has not provided a reasonable explanation based on the facts of the claim or the law to justify its offers. Furthermore, The Hartford has not responded to our repeated requests for arbitration and for The Hartford's proposed arbitrators.

Chapter 93A of the Massachusetts General Laws subjects The Hartford to potential exposure for double or treble damages, attorneys' fees and related costs. If there is a finding that The Hartford knowingly performed an unlawful act or failed to make a reasonable offer of settlement upon demand with knowledge or reason to know that the acts complained of violated Section 2 of Chapter 93A, at least double damages will be imposed. "The standard is objective and requires a defendant to investigate the facts and consider the legal precedence." *Heller v. Silver Branch*, 376 Mass 621 (1978).

Section 2 (a) of Chapter 93A provides in relevant part that: "... unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Supreme Judicial Court has found ample support for an award of multiple damages when a demand letter delineated the unfair practice and set out the pertinent text of Chapter 93A. *Id.*, at 628.

The burden is on The Hartford to show the reasonableness of any settlement offer it makes in response to this certified mail demand letter. *Patry v. Harmony Homes*, 10 Mass. App. Ct. 1,

rev. den'd 381 Mass. 781 (1980). A settlement offer made which is later determined to be unreasonable still subjects an insurer to multiple damages. *Id.*, at 6 - 7.

In sum, The Hartford's conduct in the handling of Mr. Gilligan's claim constitutes unfair and deceptive practices, the result of which continue to cause damages to Mr. Gilligan. It is clear that The Hartford failed to offer a fair and equitable settlement when liability was reasonably clear. Under the law in Massachusetts, liability is reasonably clear when "a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insured was liable to the plaintiff." *O'Leary-Alison v. Metropolitan Property & Cas. Ins. Co.*, 52 Mass. App. Ct. 214, 217 (2001) (quoting *Demeo v. State Farm Mut. Auto. Ins. Co.*, 38 Mass. App. Ct. at 956-57).

The Hartford's failure to make a reasonable settlement offer under the circumstances of Mr. Gilligan's constitutes an unfair and deceptive act or practice under M.G.L. c.93A §2 and is an unfair claim settlement practice declared unlawful by M.G.L. c. 176D §3(9). Specifically, The Hartford has violated c. 176D §3(9)(f) by failing to effectuate prompt, fair and equitable settlement offers for claims in which liability has become reasonably clear. The Hartford also violated MGL c. 176D §3 (9) (n) by failing to "provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law ... for a compromise settlement." Furthermore, The Hartford failed to respond, in violation of 176D §3(9)(b), by failing to acknowledge and act reasonably promptly upon our communications requesting arbitration and The Hartford's proposed arbitrators.

As a result of The Hartford's unfair and deceptive claims settlement practices, Mr. Gilligan sustained damages, and is required to commence litigation to obtain a court order to require The Hartford to submit to arbitration and to appoint an arbitrator. The Hartford's bad faith actions have caused Mr. Gilligan to file this 93A claim and will require him to "institute litigation, and, in so doing, to incur the inevitable 'costs and frustrations that are encountered when litigation must be instituted and no settlement is reached.'" *Hopkins v. Liberty Mut. Ins. Co.*, 434 Mass. 556, 567 (2001) (quoting *Clegg v. Butler*, 424 Mass. 413, 419 (1997).

Pursuant to M.G.L. c. 93A §9, when The Hartford is found to have violated M.G.L. c. 176D or c. 93A by failing to make a reasonable offer of settlement as provided by law and failing to respond to our repeated requests for arbitration, The Hartford may be liable for multiple damages, interest and attorney's fees. It is clear from the history of this case that The Hartford knowingly and repeatedly engaged in unfair claim settlement practices throughout the claim handling process, thus triggering multiple damages under c. 93A.

III.  **DEMAND FOR RELIEF**

Based on Kelli Lucier's clear liability and Mr. Gilligan's harms and losses, Mr. Gilligan's claim has a value greater than The Hartford's settlement offers of $15,486, $22,500, $30,000 and $35,000. As a result, Mr. Gilligan hereby demands that The Hartford:

1. "provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law ... for a compromise settlement", as required by MGL c.

176D §3 (9) (n), including the sums allocated for partial disability, pain and suffering, past medical expenses, future medical expenses, permanent impairment, residual limitations, anxiety and emotional trauma.

2. Respond to our request for arbitration, and

3. effectuate a prompt, fair and equitable settlement in the sum of $130,000 for Mr. Gilligan's claim for which Kelli Lucier's liability is more than reasonably clear.

Chapter 93A allows The Hartford 30-days from receipt of this demand to respond. If we do not receive a reasonable settlement offer within that 30-day period, we will not be limited to our demand and will seek full compensation. In addition, pursuant to M.G.L. c. 93A, treble damages, attorney's fees, and costs may be awarded based upon a finding that The Hartford acted in bad faith in failing to grant relief with knowledge, or reason to know, that its acts violated the statute.

Very truly yours,

Kevin S. Sullivan

Certified Mail RRR

Dc    Timothy Gilligan

# Exhibit C



Prepare. Protect. Prevail.

RECEIVED MAR 17 2021

THE HARTFORD

CERTIFIED & REGULAR MAIL

March 12, 2021

Law Offices of Kevin S. Sullivan, LLC
Fletcher Street Professional Center
9 Fletcher Street, Suite A
Chelmsford, MA 01824-2886

Re: Insured: Pipefitters Association Local Union
Claimant: Timothy Gilligan
Date of Loss: 5/30/2018
Claim No: Y89 AC 22188
Policy No: 08 UEN AA1580



Dear Attorney Sullivan,

This letter is in reference to the above mentioned claim and responds to your letter of February 23, 2021 in which you reference Massachusetts Consumer Protection Act, Massachusetts General Laws, Chapter 93A, Section 9. Initially, we reject your assertions that Twin City Fire Insurance Company (Twin City) is in breach of its obligations under the law and in particular under Chapter 93A.

We understand that Mr. Gilligan has received $20,000.00 in compensation from MAPFRE Insurance on behalf of Kelli Lucier and is pursuing $130,000 in underinsured motorist benefits through Twin City.

Following receipt of your letter, we have again reviewed this claim and the medical records provided by your office regarding Mr. Gilligan's medical treatment and have determined that the settlement offer extended by Kristen Tillman in the amount of $35,000.00 to be fair and reasonable.

You have not presented evidence to support your demand for $130,000.00, however, we would consider any additional medical records or other evidence you may provide in support of additional damages.

If you would like to discuss this in further detail, please feel free to contact me at 860-602-1566.

Sincerely,

Caroline Girard
Litigation Consultant
Twin City Fire Insurance Company

The Hartford
Eastern GL & Auto Litigation
P.O. Box 14263
Lexington, KY 40517
Toll-Free 888-525-2652
Fax 866-809-1178

PCN: 30014202103102000377 DCN: 30014202103102000377001 Received Date/Time: 3/10/2021 7:13:22 AM Page 3 of 4